

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and HOWARD McDOUGALL, Trustee, <br><br> Plaintiffs, <br><br> v. <br><br> INDY TRANSPORT, INC., an Indiana corporation, <br><br> Defendant. | Civil Action No.: 06 C 4984 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund and its trustee, Howard McDougall (collectively, "the pension fund"), sued Indy Transport, Inc. ("Indy") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for allegedly failing to make contributions required by collective bargaining, participation, and trust agreements. The pension fund moves for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

The facts are largely undisputed. The pension fund is an employee benefit plan and trust funded primarily by contributions from employers affiliated with the International Brotherhood of Teamsters. Pls. Facts at ¶¶ 1, 2. Indy, a union dump-trucking operation, is a member of the Teamsters' Local 716 and Joint Council 69. Def. Facts at ¶¶ 68, 69.

On June 14, 1999, Indy entered into a collective bargaining agreement obligating it to make weekly employee contributions to the pension fund. Pls. Facts at ¶¶ 10-12. The bargaining agreement's term was from April 1, 1999 to March 31, 2004, but it automatically renewed for one

year terms pursuant to an "evergreen" provision. *Id.* at ¶¶ 11, 14. The renewals could be cancelled if Local 716 provided the pension fund with "written notice of termination . . . at least one hundred twenty (120) days prior to the expiration date of March 31, 2004, or March 31 of any subsequent year." *Id.* at ¶ 14.

Under the bargaining agreement, Indy agreed to abide by the pension fund's trust agreement. *Id.* at ¶ 13. The trust agreement required Indy to contribute to the pension fund as outlined in the bargaining agreement. *Id.* at ¶¶ 24, 25. If Indy failed to promptly contribute, it incurred interest and penalties. *Id.* at ¶ 26. If Indy executed a new bargaining agreement, it was required to "promptly" submit the new agreement to the pension fund for approval. *Id.* at ¶ 25. According to the trust agreement, undisclosed changes to the bargaining agreement were not binding on the pension fund. *Id.* The trust agreement required Indy to continue making contributions during bargaining agreement negotiations. *Id.*[1]

Indy also entered into a participation agreement with Local 716. *Id.* at ¶ 17. The participation agreement provided that Indy and Local 716 would comply with the pension fund's trust agreement, including its contribution provisions. *Id.* at ¶¶ 18, 20, 21. It also required Indy to notify the pension fund of changes to the bargaining agreement. *Id.* at ¶ 19. The participation agreement remained in effect until Indy notified the pension fund that it was no longer legally obligated to contribute. *Id.* at ¶ 20. The notice provision required Indy to provide in writing the

---

[1] Indy ostensibly disputes the trust agreement's applicability because it was executed in 2006, after the operative events occurred. Def. Resp. Facts at ¶¶ 24-26, 52, 53. However, Indy does not dispute the trust agreement's authenticity or its plain language. *Id.* The trust agreement's appendix of amendments indicates none of the provisions at issue have changed since January 2000. *Id.* at ¶ 23; Priede Aff. at ¶ 30, Ex. D at i-iii. Accordingly, the trust agreement applies and the relevant provisions are binding on Indy.

2

"specific basis upon which [it] is relying in terminating its obligation to make contributions to the [pension fund]." *Id.*

In February or March 2004, Indy began negotiating a new collective bargaining agreement with Local 716. Def. Facts at ¶ 76. On May 11, 2004, Indy wrote the pension fund that the current bargaining agreement had expired, Indy was terminating the participation agreement, and it would no longer contribute to the pension fund. Pls. Facts at ¶¶ 28-31; Priede Aff. at Ex. E. The pension fund responded that Indy's notification was deficient and its contribution obligations continued under the bargaining agreement's "evergreen" clause. *Id.* at ¶¶ 32-34; Priede Aff. at Ex. F.

On August 12, 2004, Indy entered into a new bargaining agreement that was purportedly retroactive to June 1, 2004. *Id.* at ¶ 15. The new bargaining agreement did not require Indy to contribute to the pension fund; rather, Indy agreed to contribute to Local 716's pension fund. *Id.* at ¶ 16. On October 21, 2004, Indy wrote the pension fund confirming the contents of the May 11th letter and enclosing the new bargaining agreement. *Id.* at ¶¶ 40-45. The pension fund received the letter on October 25th. *Id.* at ¶ 45. The parties exchanged no other correspondence. *Id.* at ¶ 27.

The pension fund audited Indy after receiving the October 21st letter. *Id.* at ¶ 47. According to the pension fund, Indy owes $69,522.87 in contributions, interest, penalties, and audit fees. *Id.* at ¶ 66. The pension fund filed this ERISA suit to collect the unpaid contributions and related damages. Compl., Dkt. No. 1 (Sept. 14, 2006).

## ANALYSIS

The pension fund moves for summary judgment, arguing there is no genuine issue of material fact that Indy owes contributions under the bargaining, participation and trust agreements. The pension fund contends Indy was required to contribute through October 25, 2004, the date Indy gave

proper termination notice under the participation and trust agreements. Alternatively, the pension fund contends Indy was obligated through August 12, 2004, the date Indy executed the new bargaining agreement. Indy contends there is a triable factual issue regarding whether it gave adequate notice terminating its contribution obligations prior to March 31, 2004.

## I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden of demonstrating it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once the movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. The Collective Bargaining Agreement

ERISA's Section 515 provides that every employer obligated to contribute to a multi-employer plan pursuant to a collective bargaining agreement must do so according to the bargaining agreement's terms and conditions. 29 U.S.C. § 1145. "This means . . . that a plan may enforce the writings according to their terms, if 'not inconsistent with law.'" *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Trucking Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). The bargaining agreement's language is unambiguous and undisputed. Indy's contribution

4

obligations continued until March 31, 2004, and then for subsequent one year terms, unless Local 716 provided a written termination notice at least 120 days prior to the expiration date. Pls. Facts at ¶¶ 12, 14.

Indy contends Joint Council 69 provided proper notice. Opp'n Memo at 3. Indy submits the affidavit of Gary Green, Local 716's president, which states: "Written notice of termination was provided by Joint Council 69 to [the Teamsters] in compliance with the terms of the 1999 [bargaining agreement] at least 120 days prior to March 31, 2004." Def. Facts. at ¶ 74; Opp'n Memo. at 5. Green's conclusory statement does not create a triable issue that adequate notice was provided. *Laborer's Pension Fund v. RES Env't Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (affidavit containing no specific information was insufficient to prevent summary judgment). Moreover, Indy does not provide a copy of the written notice. Green's bare affidavit is inadmissible at trial; it violates the "best evidence" and "completeness" rules. FED. R. EVID. 106, 1002; *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003) (trial court properly struck affidavit referencing trust agreement that was not made part of record). The court cannot consider Green's statement. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (evidence submitted at summary judgment must be admissible at trial under Fed. R. Evid.); *Markos v. Chicago Park Dist.*, No. 01 C 5544, 2002 WL 1008459, at *1 (N.D. Ill. May 13, 2002) (Conlon, J.). Accordingly, there is no genuine issue of material fact that Indy failed to properly terminate the bargaining agreement. *See Central States, Southeast and Southwest Areas Pension Fund v. Dussault Moving, Inc.*, 871 F. Supp. 1046, 1049 (N.D. Ill. 1995) (Bucklo, J.) (summary judgment appropriate for pension fund where no genuine factual issue that agreement not properly cancelled).

Indy contends the bargaining agreement was terminated even if notice was not "in full

compliance with the letter of the termination provisions." Opp'n Memo. at 5. Although negotiations over a bargaining agreement that begin prior to the agreement's expiration may waive technical notice requirements, notice must still be given. *Long Island Head Start Child Dev. Servs. v. National Labor Relations Bd.*, 460 F.3d 254, 259 (2d Cir. 2006). The cases Indy cites do not hold that ongoing negotiations obviate the need for notice altogether. *See Drew Div. of Ashland Chem. Co.*, 336 NLRB 477, 481 (2001) (untimely notice waived because parties negotiating); *Lou's Produce, Inc.*, 308 NLRB 1194, 1205 n.4 (1992) ("evergreen" clause's writing and timeliness requirement waived during negotiations). Indy's contention that the new bargaining agreement retroactively terminated its contribution obligation is without merit. *See Ossey v. Keystone Tube Co.*, No. 95 C 327, 1995 WL 505495, at *5-6 (N.D. Ill. Aug. 21, 1995) (Conlon, J.) (new bargaining agreement could not be applied retroactively); *Wisconsin UFCW Unions & Employers Health Plan v. Woodman's Food Mkt., Inc.*, 348 F. Supp. 2d 1005, 1009 (E.D. Wis. 2004) (same). At a minimum, Indy was obligated to contribute to the pension fund until August 12, 2004, the new bargaining agreement's execution date.

## III. The Participation and Trust Agreements

The pension plan contends the participation and trust agreements further extend Indy's contribution obligations. There is no dispute Indy is bound by the participation and trust agreements' unambiguous terms. *Gerber*, 870 F.2d at 1149. The participation agreement requires written notice that Indy is "no longer under a legal duty to make contributions" and the "specific basis" for termination. Pls. Facts at ¶¶ 19, 20. The trust agreement requires that Indy provide the pension fund the new bargaining agreement for review. *Id.* at ¶ 25. Both agreements obligate Indy to continue making contributions until the notice provisions are satisfied. *Id.* at ¶¶ 20, 25.

Indy contends its May 11, 2004 letter to the pension plan was sufficient to terminate its contribution obligations under both agreements. But it is undisputed that the new bargaining agreement was not attached to the May 11th letter. *Id.* at ¶¶ 29, 30. The new agreement was not even executed until August 12, 2004. *Id.* at ¶ 15. Indy's failure to provide the new agreement made it impossible for the pension fund to evaluate whether it would reject the agreement as "unlawful and/or inconsistent with any rule or requirement for participation by [Indy]." *Id.* at ¶ 25; Priede Aff. at 33, Ex. D. A central purpose of the trust agreement's notice provision is to allow evaluation of the new agreement's impact on the pension fund. *Id.* at ¶ 25. The court finds there is no genuine issue of material fact that the notice provided by the May 11th letter was insufficient to terminate the trust agreement. *Dussault*, 871 F. Supp. at 1049.

Indy argues the trust agreement could not "stand on its own" if the bargaining agreement was terminated. Opp'n Memo. at 13. There is no genuine issue of material fact that Indy failed to terminate the bargaining agreement. *See* sec. II, *supra*. Indy's alternate position appears to be that the trust agreement was effectively terminated upon the new bargaining agreement's execution. Pls. Facts at ¶ 15. The argument is uncompelling. *See Dussault*, 871 F. Supp. at 1048 (pension fund is third-party beneficiary to participation agreement that endures even if bargaining agreement terminated); *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 461 (6th Cir. 1989) (whether contribution obligations continue beyond expiration of collective bargaining agreement depends on parties' intent). Indy agreed to be bound by the trust agreement, agreed to provide the pension fund the new bargaining agreement, and agreed to make contributions until the agreement was received. *Id.* at ¶¶ 24, 25. The trust agreement's plain language indicates only one way to terminate the contribution obligation: submit a new bargaining agreement for

7

approval by the pension fund. *Id.* at ¶ 25. Thus, Indy's contribution obligations continued until October 25, 2004, the date the pension fund received the new bargaining agreement. Pls. Facts at ¶¶ 42, 45, 46.

## IV. Damages

ERISA's Section 505 and the trust agreement provides for the collection of unpaid contributions, plus interest, fees, costs, and liquidated damages. 29 U.S.C. § 1132(g)(2); Pls. Facts at ¶¶ 26, 54-56, 58-66. An audit conducted by the pension fund determined Indy owes $69,522.87. *Id.* at ¶ 66 ($45,475.00 in unpaid contributions; 24,047.87 in other fees and costs). Indy does not dispute the amount, only when its contribution obligation ended and the applicability of the 2006 trust agreement. The court determines Indy's obligation continued until October 25, 2004 under the binding trust agreement; therefore, there is no genuine issue of material fact that Indy is liable for the requested amount. *See Laborer's Pension Fund*, 377 F.3d at 740-41 (ERISA damages award appropriate where defendant presented nothing refuting calculation); *Ossey*, 1995 WL 505495, at *9.

## CONCLUSION

For the reasons stated above, the motion for summary judgment is granted.

ENTER:

Suzanne B. Conlon
March 6, 2007                                   United States District Judge

8